## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

**JUSTIN WALTERS**                                                                                   **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 5:17CV-P168-TBR**

**JESSE COOMBS et al.**                                                               **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff Justin Walters, a prisoner presently incarcerated at Kentucky State Penitentiary (KSP), filed a *pro se* complaint under 42 U.S.C. § 1983 (DNs 1 & 1-3). This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will dismiss the official-capacity claims for monetary damages and allow the following claims to proceed: (1) the Eighth Amendment excessive-force claims against Defendants Coombs and Tomlin in their individual capacities and in their official capacities for injunctive and declaratory relief; (2) the First Amendment retaliation claims against Defendants Coombs and Tomlin in their individual capacities and in their official capacities for injunctive and declaratory relief; and (3) the Eighth Amendment claims against Defendants Inglish, Burnett, Knight, and Mankle in their individual capacities and in their official capacities for injunctive and declaratory relief.

### I. SUMMARY OF CLAIMS

Plaintiff identifies the following six Defendants in this action: (1) Jesse Coombs, a Lieutenant at KSP; (2) Brendan Inglish, a Sergeant at KSP; (3) Wesley Burnett, a Correctional Officer (CO) at KSP; (4) Tommy Tomlin, a Sergeant with KSP; (5) James Knight, a CO at KSP; and (6) Jonathan Mankle, a CO at KSP. Plaintiff sues Defendants in their individual and official

capacities. Plaintiff seeks monetary damages, declaratory relief, and injunctive relief. Plaintiff requests a jury trial "on all Issues triable by Jury."

Plaintiff states that on the morning of February 20, 2017, while he was incarcerated in the segregation unit, Defendants Coombs, Inglish, and Burnett came to his cell "to conduct a 'random' cell search." Plaintiff states that he was woken up and told to "stand on the other side of the walk against the wall." Plaintiff states he complied. According to Plaintiff, "[a]fter 10-15 minutes of searching [his] cell and finding nothing [Defendant] Inglish exited [Plaintiff's] cell holding a folded over piece of toilet paper saying It was crushed pills." Plaintiff states that Defendant Coombs agreed that it was crushed pills and asked Plaintiff if he had anything else. According to Plaintiff, he told Defendants Inglish and Coombs that he had nothing in his cell, and he asked them why they planted something on him and when would he be left alone. Plaintiff states that, to him, the substance on the toilet paper looked like "dried tooth paste." According to Plaintiff, he asked Defendant Coombs, "What's with all the retaliation?" Plaintiff represents that Defendant Coombs responded to Plaintiff by telling him to stop filing grievances on his staff and that "[e]veryone who files grievances on staff gets the same treatment."

Then, according to Plaintiff, Defendant Coombs instructed Defendant Burnett to "help him plant [Plaintiff's] face in the wall." Plaintiff states that Defendant Coombs ordered Defendant Inglish to remove all of Plaintiff's property from his cell and that he would "see how many grievances [Plaintiff] filed[d] with nothing In [his] cell." Plaintiff states that while all this was happening, Lt. Peede came onto the walk and inquired about what was happening. According to Plaintiff, when Lt. Peede observed the substance in the toilet paper, he did not think that it looked like crushed medication. Plaintiff states that Defendant Coombs commented to Lt. Peede saying, "You know how I like to plant things sometimes." Lt. Peede encouraged

2

Plaintiff to remain calm and assured Plaintiff that he would get all his stuff back if the substance was not medication.

Plaintiff states that Defendant Coombs ordered Defendant Burnett to help him place Plaintiff back in his cell. Plaintiff states that as he stepped into his cell, Defendant Inglish squatted down and told Plaintiff to take off his shower shoe. According to Plaintiff, he lifted his foot, and Defendant Inglish took off his shower shoe. Plaintiff states that Defendant Inglish instructed Plaintiff to do the same with his other foot. Plaintiff states that when he lifted his second foot, Defendant Coombs grabbed Plaintiff by the back of the neck and slammed Plaintiff's head into the concrete floor twice "causing swelling and abrasions on [Plaintiff's] head and face that eventually lead to two black eyes." Plaintiff states that he "got dizzy and almost blacked out." At this point, Plaintiff states that someone else stepped in for Defendant Inglish "because [Defendant] Inglish said [Plaintiff] kicked him In the chest."

Plaintiff states that he was placed in the restraint chair for two hours. According to Plaintiff, while in the restraint chair, he requested to be seen by medical. Plaintiff states that Defendant Burnett told Plaintiff to "shut [his] mouth or he would mace [him]." Plaintiff states that after he was placed back in his cell, he told Nurse Wynn about his injuries "and [Defendant] Coombs told her not to touch [Plaintiff] because [Plaintiff] would file a grievance on them." According to Plaintiff, Nurse Wynn "never cleaned [Plaintiff's] cuts or attended to the wounds on [his] face and head and wrist and ankles, which everything that had been mentioned above was turning purple."

Plaintiff states that he was moved the next day, February 21, 2017, to 7-Cell House by Defendants Inglish, Coombs, and non-defendant James Smith. Plaintiff states that he was told he would get his state property, "clothing, sheets, blankets, socks, and boxers and sometime

3

mattress," back the next day. On February 25, 2017, Plaintiff states that Lt. Jesse Jenkins and another officer came to his cell to read him his disciplinary report. According to Plaintiff, Lt. Jenkins told Plaintiff that he messed up by filing grievances on staff for not getting his property back. Plaintiff states that once he "was back In [his] cell . . . [he] received [his] property 45 minutes later." Plaintiff states that he wrote Warden White about staff retaliating against him for exercising his right to file grievances, about his "face being busted and staff also assaulting he never responded."

On the evening of September 26, 2017, Plaintiff states that he was working as a janitor in 7- Cell House. Plaintiff states he asked Defendant Tomlin if he could use the "'observation one' toilet." According to Plaintiff, Defendant Tomlin gave Plaintiff permission and the door was opened. Plaintiff states that as he was using the facility, the "'Tray slot' was opened and [P]laintiff was sprayed with chemicals, Rolls of toilet paper were thrown at [him]. While all this was going on [Plaintiff] was told [he] better stop Filing grievances on staff." Although he could not see who was throwing things and talking to him, Plaintiff states that he "recognized [Defendant] Tomlin's voice and seen he was the one throwing things at me and [Defendant] Mankle." Plaintiff states that when he "was leaving 'observation one,' . . . [Defendant] Tomlin sprayed [Plaintiff] in the eyes and mouth with Bleach and Germicidal cleaning chemicals." Plaintiff states he later asked to wash out his eyes because they were 'burning and being puffy and irritated."

Plaintiff states that he is asserting Eighth Amendment claims against Defendants Coombs and Tomlin for excessive force, First Amendment claims against Defendant Coombs and Tomlin for retaliation, and Eighth Amendment claims against Defendants Inglish, Burnett, Knight, and

Mankle for "failing to correct" and "encouraging the continuation of the misconduct" of Defendants Coombs and Tomlin.

## II. **STANDARD OF REVIEW**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create

a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. LEGAL ANALYSIS

#### A. Official-Capacity Claims

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Because Defendants are all employees or officers of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky. *Id.* at 166. State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, the claims seeking money damages from state officers or employees in their official capacities are not cognizable claims under § 1983. Additionally, the Eleventh Amendment[1] acts as a bar to claims for monetary damages against Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169; *see also Boone v. Kentucky*, 72 F. App'x 306, 307 (6th Cir. 2003) ("[Plaintiff's] request for monetary relief against the prosecutors in their

---

[1] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

6

official capacities is deemed to be a suit against the state and also barred by the Eleventh Amendment."); *Bennett v. Thorburn*, No. 86-1307, 1988 WL 27524, at *1 (6th Cir. Mar. 31, 1988) (concluding that an official-capacity suit against a judge who presided over state-court litigation was barred by the Eleventh Amendment).

Accordingly, Plaintiff's official-capacity claims seeking monetary damages will be dismissed.

### B. Individual-Capacity Claims

#### 1. Eighth Amendment Excessive-Force Claims against Defendants Coombs and Tomlin

Plaintiff alleges that on February 20, 2017, while he was getting back into his cell as instructed by Defendant Coombs, Defendant Coombs grabbed Plaintiff by the back of the neck and slammed his head into the concrete floor twice "causing swelling and abrasions on [Plaintiff's] head and face that eventually lead to two black eyes."

As for Defendant Tomlin, Plaintiff alleges that on the evening of September 26, 2017, Defendant Tomlin sprayed Plaintiff with chemicals, threw rolls of toilet paper at Plaintiff, and sprayed Plaintiff in the eyes and mouth with Bleach and Germicidal cleaning chemicals.

Upon consideration, the Court will allow the Eighth Amendment excessive-force claims to proceed against Defendant Coombs and Defendant Tomlin.

#### 2. First Amendment Retaliation Claims against Defendants Coombs and Tomlin

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) "there is a causal connection between

elements one and two-that is, the adverse action was motivated, at least in part, by the plaintiff's protected conduct." *Id.*

Plaintiff alleges that Defendants Coombs and Tomlin both retaliated against him for filing prison administrative grievances. Plaintiff has a constitutionally protected right to file grievances as long as they are not frivolous. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).

Plaintiff alleges that on or about February 20 & 21, 2017, Defendant Coombs retaliated against him by searching his cell, planting a substance in his cell, slamming Plaintiff's head against the concrete floor, placing Plaintiff in a restraint chair for two hours, removing Plaintiff's property from his cell, and telling Nurse Wynn not to treat him.

Plaintiff alleges that Defendant Tomlin retaliated against him on September 26, 2017, when Defendant Tomlin sprayed Plaintiff with chemicals, threw rolls of toilet paper at Plaintiff, and sprayed Plaintiff in the eyes and mouth with Bleach and Germicidal cleaning chemicals.

Upon consideration, the Court will allow First Amendment retaliation claims to proceed against Defendant Coombs and Defendant Tomlin.

**3. Eighth Amendment Claims against Defendants Inglish, Burnett, Knight, and Mankle**

Plaintiff alleges that Defendants Inglish, Burnett, and Knight were present and participated in, failed to correct, and encouraged the alleged wrongful behavior of Defendant Coombs on February 20 & 21, 2017. Plaintiff alleges that Defendant Mankle was present, participated in, failed to correct, and encouraged the wrongful behavior of Defendant Tomlin on September 26, 2017.

Upon consideration, the Court will allow these Eighth Amendment claims to proceed.

## IV. ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the official-capacity claims for damages are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and pursuant to 28 U.S.C. § 1915A(b)(2) for seeking monetary relief from Defendants who are immune from such relief.

**IT IS FURTHER ORDERED** that the following claims will proceed:

(1) The Eighth Amendment excessive-force claims against Defendant Coombs and Defendant Tomlin in their individual capacities and in their official capacities for declaratory and injunctive relief;

(2) The First Amendment retaliation claims against Defendant Coombs and Defendant Tomlin in their individual capacities and in their official capacities for declaratory and injunctive relief; and

(3) The Eighth Amendment claims against Defendants Inglish, Burnett, Knight, and Mankle in their individual capacities and in their official capacities for declaratory and injunctive relief.

The Court passes no judgment on the merit or ultimate outcome of this case. The Court will enter a separate Order Regarding Service and Scheduling Order governing the development of the continuing claims.

Date:

cc: Plaintiff, *pro se*
     Defendants
4413.003